IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FRANCIS HOLLYWOOD )
)
v. ) NO. 3:19-00979
)
UNITED PARCEL SERVICE, INC. )

**TO:   Honorable Aleta A. Trauger, District Judge**

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered October 15, 2020 (Docket Entry No. 28), this *pro se* case was referred to the Magistrate Judge for pretrial proceedings.

Pending before the court is the motion for summary judgment (Docket Entry No. 31) of Defendant United Parcel Service, Inc., to which Plaintiff has responded in opposition. *See* Response (Docket Entry No. 34).   For the reasons set out below, the undersigned respectfully recommends that the motion be granted and that this case be dismissed.

## I.   FACTUAL BACKGROUND

Francis Hollywood ("Plaintiff") is an employee of United Parcel Services, Inc. ("UPS" or "Defendant").   He currently works as a Package Handler at Defendant's Whites Creek distribution center in Nashville, Tennessee, where his primary duty is loading boxes into trucks. Plaintiff was initially hired into this position as a part-time employee in 2009 but was promoted in November 2019 to a full-time employee as a result of his seniority.   The Package Handler position is a union position that is governed by the terms and conditions of a collective bargaining agreement ("CBA").

During the years prior to receiving the seniority promotion to a full-time Package Handler, Plaintiff sought to become a full time Feeder Driver with Defendant. The Feeder Driver position entails operating tractor-trailers and driving them between Defendant's local hubs. To become qualified for selection to a Feeder Driver position, an applicant must successfully complete the Feeder Driver Training Program ("FD Training"). The applicant must also have a Commercial Driver's License ("CDL"). The FD Training consists of a "non-productive" component, during which the applicant attends classroom training and practices the necessary safety and driving skills on Defendant's property under the supervision and observation of a trainer. If the applicant successfully completes the "non-productive" component, the applicant must have or obtain a CDL prior to moving to the "productive" component, during which they are accompanied by a trainer while they operate a tractor trailer on the public roadways. Applicants who successfully complete both components of the FD Training are then eligible for selection for open Feeder Driver positions. Under the terms of the CBA applicable to the Feeder Driver position a trainee who is disqualified from FD Training must wait one year before attempting the FD Training again and a trainee who has been disqualified three times is prohibited from further attempts to qualify.

Plaintiff attempted to qualify for a Feeder Driver position by attending FD Training in 2014, 2015, and 2016 but was not able to successfully complete the "non-productive" component on each occasion because his trainers disqualified him based on their concerns about his ability to safely and proficiently operate the tractor trailer and correctly perform all of the required duties associated with the position. In October 2018, Plaintiff also unsuccessfully attempted to

2

qualify for a Shift Driver position after failing to complete the "non-productive" component of training for that position.

On January 11, 2019, Plaintiff, who is Black and a naturalized United States citizen from Ghana, filed a Charge of Discrimination ("Charge") against Defendant with the Tennessee Human Rights Commission ("THRC") and the Equal Employment Opportunity Commission ("EEOC"). In the Charge, Plaintiff check marked boxes indicating that race and retaliation were the cause for his Charge and specifically alleged:

> Since 2014, I have been trying to promote or move to a driver position. That year I was told by the trainer that "foreigners" should not have a right to take American jobs (despite the fact I am a naturalized citizen). That year I was disqualified. When you are disqualified you have to wait a year before you can reapply. I have reapplied every year since then and every year I have been disqualified. Since 2015, I have filed grievances with the union and complaints with HR that I feel the disqualifications are discrimination due to my race. Nothing has been done. I believe the continued disqualifications are continued discrimination and retaliation for my complaints. The most recent disqualification occurred in October 2018. White applicants [that have] bid for the positions have not been consistently disqualified like I have been. I believe they are ignoring me and my complaints so I will quit, which I have refused to do. . . . I believe that I have been discriminated and retaliated against due to my race in violation of Title VII.

*See* Docket Entry No. 34-1 at 3. The EEOC took no action on the Charge and issued Plaintiff a right-to-sue letter on August 6, 2019. *Id*. at 1.[1]

## II.   COMPLAINT AND PROCEDURAL BACKGROUND

On November 1, 2019, Plaintiff filed this lawsuit against UPS, alleging racial discrimination, national origin discrimination, and retaliation and seeking relief under Title VII

---

[1] It appears that Plaintiff was represented by counsel at the time he filed his Charge. *Id*. at 1; Plaintiff's Response (Docket Entry No. 34) at 3.

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Tennessee Human Rights Act ("THRA"), T.C.A. §§ 4-21-101 *et seq.*, and 42 U.S.C. § 1981. *See* Complaint (Docket Entry No. 1). Plaintiff alleges that, since 2014, he has applied for a promotion to a full-time loader position or a full-time driver position but has not been selected despite being qualified for a full-time position, *id*. at ₱₱ 3-7, and further alleges that he has been subject to a yearlong hold on applying for another position after being disqualified. *Id*. at ₱ 9. He alleges that, on one occasion when applying for a full-time driver position, he was told by his trainer that "foreigners are not right for the driver position because foreigners should not make more money and take jobs from Americans." *Id*. at ₱ 8. Plaintiff alleges that he made reports to the Defendant's HR department and filed grievances with his union about his belief that he was not being selected for a promotion and was being disqualified from applying for promotions because of racial and national origin discrimination. *Id*. at ₱₱ 10-11.

Based upon these allegations, Plaintiff sets out four counts for relief in his complaint. In Count I, he asserts race and national origin discrimination in violation of the THRA based upon Defendant's alleged failure to select him for a promotion to a new position. *Id*. at ₱₱ 13-17. In Count II, he asserts race discrimination in violation of Title VII based upon Defendant's alleged failure to select him for a promotion to a new position. *Id*. at ₱₱ 18-22. Count III asserts that Plaintiff was singled out for harassment and discrimination based on race in violation of 42 U.S.C. § 1981, *id*. at ₱₱ 23-27, and that "white employees were not subjected to the type of harassment, derogatory name calling and treatment that Plaintiff suffered, including by Plaintiff's trainer repeatedly telling him foreigners are not right for the driver positions because foreigners should not make more money and take jobs from Americans." *Id*.

4

at ¶ 25.    In Count IV, Plaintiff asserts that he was subjected to retaliation in violation of the THRA, Title VII, and 42 U.S.C. § 1981, *id*. at ¶¶ 28-33, based upon allegations that Defendant "disciplined and terminated his employment" and refused to promote him because he engaged in statutorily protected conduct when he complained and protested about what he believed to be "race harassment/discrimination in the workplace."    *Id*. at ¶¶ 31 and 32.

Plaintiff filed his lawsuit while represented by counsel.    After Defendant filed an answer (Docket Entry No. 9), an initial case management conference was conducted and an initial case management order was entered January 6, 2020, that set deadlines for pretrial activity in the case.    *See* Initial Case Management Order (Docket Entry No. 19).    Plaintiff's counsel was permitted to withdraw from the case on March 31, 2020, and Plaintiff, who did not obtain new counsel, has proceeded *pro se* thereafter, including completing discovery and unsuccessfully attempting to settle the case.    *See* Docket Entry Nos. 26 and 41.    Other than the Defendant's motion for summary judgment, there are no pending motions in the case.

### III.    MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendant moves for summary judgment on all claims under Rule 56 of the Federal Rules of Civil Procedure.    Defendant contends that it is entitled to judgment as a matter of law because: (1) Plaintiff abandoned all claims, except for his race discrimination claim based on Defendant's failure to promote him to a Feeder Drive position, by making a clear and ambiguous statement during his deposition that he was no longer pursuing any other claims; (2) Plaintiff's claims under the THRA and Title VII are time barred because they were not timely pursued; (3) Plaintiff's race discrimination claim under 42 U.S.C. §1981 fails because he cannot establish, in light of his failure to have a CDL and his failure to complete the FD Training, that he was

5

qualified for the Feeder Driver position and cannot show that other employees of similar qualifications who were not members of the protected class received promotions to the Feeder Drive position; and, (4) Plaintiff's responses to written interrogatories and his deposition testimony show that his sole claim for damages is recovery of payment for training time that he is not entitled to under the CBA. *See* Defendant's Memorandum (Docket Entry No. 32).

In support of its motion, Defendant relies upon: (1) a statement of undisputed material facts ("SUMF") (Docket Entry No. 32-1); (2) Plaintiff's deposition transcript (Docket Entry No. 32-2); (3) the affidavit of UPS Labor Manager Jody Peters (Docket Entry No. 32-3); (4) the affidavit of UPS Division Manager Kimberly Mitchell (Docket Entry No. 32-4); (5) the affidavit of UPS On-road Supervisor Donald Williams (Docket Entry No. 32-5); (6) the affidavit of UPS On-Road Supervisor Michael Moore (Docket Entry No. 32-6); (7) the affidavit of former UPS On-Road Supervisor Nathan Clement and an exhibit attached thereto (Docket Entry No. 32-7); and, (8) Plaintiff's written responses to Defendant's requests for admissions (Docket Entry No. 32-8).

Plaintiff's response to the motion consists of a nine page brief (Docket Entry No. 34), a response to Defendant's SUMF (Docket Entry No. 34-2), and 56 pages of various documents, pictures, what appears to be an internal complaint Plaintiff made in 2014 after being disqualified from FD Training, what appear to be Plaintiff's responses to Defendants' interrogatory requests, and informational summaries and lists created by Plaintiff about the Feeder Driver position (Docket Entry No. 34-1). In his brief, Plaintiff disputes that his case should be dismissed and disputes Defendant's supporting evidence. He points to what he contends are facts that support his allegations of racial discrimination by Defendant.

6

In reply, Defendant contends that nothing raised by Plaintiff in his response adequately rebuts the legal arguments for summary judgment set out in its motion, that much of Plaintiff's response is procedurally improper, and that the majority of evidence filed by Plaintiff is inadmissible or irrelevant. *See* Defendant's Reply (Docket Entry No. 37).

## IV. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In considering whether summary judgment is appropriate, the court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). The court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of showing the absence of genuine factual disputes. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In other words, to defeat summary judgment,

the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

## V. TITLE VII, THRA, AND SECTION 1981

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e−2(a)(1). Title VII also "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult," and thus prohibits conduct that is "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 67 (1986). Finally, Title VII's anti-retaliation provision provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e−3(a).

A claim under Title VII must be supported by direct evidence of unlawful conduct or by circumstantial evidence that raises an inference of unlawful conduct. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Direct evidence, if believed, requires no inferences to conclude that unlawful conduct was a motivating factor in the challenged action. *Abbott v.*

8

*Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). If the plaintiff relies upon circumstantial evidence, the court utilizes the burden shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff is first required to establish a *prima facie* case of unlawful conduct and, if a *prima facie* case is shown, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged conduct. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant articulates such a reason, the presumption drops from the case, and the plaintiff must then show that the reason offered by the defendant is a pretext for unlawful conduct. *Id*. at 508. Whatever method of proof is used, the ultimate burden is on the plaintiff to show that the defendant engaged in unlawful conduct under Title VII. *St. Mary's Honor Ctr.*, 509 U.S. at 518.

The substantive analysis of discrimination and retaliation claims brought under the THRA and Section 1981 mirrors that used for Title VII claim. *Chattman v. Toho Tenax Amer., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012) (analyzing THRA claims under the Title VII standard); *Mullins v. Goodyear Tire & Rubber Co.*, 291 Fed.App'x. 744, 745 n.1 (6th Cir. 2008) ("The THRA is a state law analogous to Title VII and the statues are analyzed identically.") *Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999) (explaining that Section 1981 claims are analyzed "under the same standards as claims of race discrimination brought under Title VII.").

9

## VI. ANALYSIS

### A. The sufficiency of Plaintiff's response

Like many *pro se* parties who file a response to a motion for summary judgment, Plaintiff's response suffers from shortcomings that cannot be disregarded simply because Plaintiff is proceeding *pro se*. First, his response brief contains numerous factual assertions that are not supported by affidavits or by declarations that are sworn under the penalty of perjury. Unsworn statements of fact cannot be considered as evidence rebutting a motion for summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970); *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991). Second, although Plaintiff did file a response to Defendant's SUMF, his response does not include citations to the record in support of any of his assertions of factual disputes. Such citation to the record is required by Federal Rule 56(c)(1) and Local Rule 56.01(c). Plaintiff must specifically point to the evidence in the record that supports his assertion of factual disputes. Merely filing unreferenced copies of documents and other materials with the court is not sufficient. The court is not obligated to sift through the record on behalf of Plaintiff to identify the importance of any document and to determine whether a material factual dispute exists. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

Nonetheless, in light of Plaintiff's *pro se* status, the court has given Plaintiff a great measure of leeway in the consideration of his response to the motion for summary judgment and has engaged in as full a review as possible of the merits of his claims. In the end, there are legal doctrines that require the dismissal of Plaintiff's claims and there is further a lack of evidence before the court that would permit a reasonable jury to find in favor of Plaintiff. Any

issues of fact that exist do not rise to the level of genuine issues of material fact that must be resolved at trial, and Defendant is entitled to summary judgment on all claims.[2]

## B. The claims that are before the court

A threshold matter is what claims are a part of this lawsuit and are still being pursued by Plaintiff. Plaintiff's complaint specifically sets out distinct claims: (1) THRA claims for race and national origin discrimination based upon Defendant's failure to promote him (Count I); (2) a Title VII claim for race discrimination based upon Defendant's failure to promote him (Count II); (3) a Section 1981 claim for racial harassment (Count III); and, (4) claims under the THRA, Title VII, and Section 1981 for retaliation based upon discipline, termination, and failure to promote (Count IV). *See* Complaint at 4-6. The factual allegations of the complaint only generally refer to the positions which Plaintiff alleges he was wrongfully denied as full-time "driver" or "loader" positions. *Id*. at 3, ¶ 3.

The evidence in the case shows that only three full-time positions are at issue: (1) the Feeder Driver position for which Plaintiff was disqualified in 2014, 2015, and 2016; (2) the Shift Driver position for which Plaintiff was disqualified in October 2018; and, (3) the Package Handler position that Plaintiff was promoted to in November 2019. There is no evidence of any other positions for which Plaintiff applied. During questioning from Defendant's attorney at his deposition about the legal claims that are a part of this lawsuit, Plaintiff clarified on several occasions that he was only pursuing claims based upon racial discrimination regarding the Feeder Driver position:

---

[2] Because the court, as set forth *infra*, finds that Defendant is entitled to summary judgment on Plaintiff's underlying claims, it is not necessary to address Defendant's argument

11

Q.     Mr. Hollywood, can you tell me the legal
claims that you are alleging as part of this lawsuit?
**A.     Right now, what I want to prove is that there
is discrimination going on at UPS.  I want the jury
and the judge to determine the legal claims I create
for this lawsuit.**
Q.     What types of discrimination?
**A.     Discrimination against black individuals
getting a position in the feeder department.**
Q.     So your only claim is discrimination on the
basis of race against black individuals who are
seeking a job in the feeder department?
**A.     Yes.**
Q.     Are there any claims that you are no longer
pursuing at this point?
**A.     Could you please rephrase your question?**
Q.     So other than the discrimination claim
against black individuals seeking a job in the feeder
department, there are no other claims that you are
alleging at this point?
**A.     Yes.**
Q.     Yes, there are no other claims?
**A.     No.**
Q.     No, there -- okay.   Could you just tell me if this is the only
claim you are alleging or if you have other claims?
**A.     It is black individuals not getting the
chance to drive for UPS.  That is my claim right now.**
Q.     So drivers in the feeder department?
**A.     Yes.  It goes on -- driving to -- that -- I
am not concerned with package driving.  All I want is
feeder driving, that is what my concentration is on
right now.**
Q.     Okay.  Thank you for clarifying.

*See* Plaintiff's Deposition Transcript (Docket Entry No. 32-2) at 39-40.

Defendant correctly points out that a claim brought in a lawsuit may be abandoned based

upon a party's deposition testimony that he is not proceeding upon a claim.  *See Williams v.*

*Cingular Wireless, LLC*, No. 3:06-1205, 2008 WL 112102 at *1 (M.D.Tenn. Jan. 9, 2008)

(Echols, J.) ("Plaintiff testified at his deposition, however, that he is not pursuing a claim for age

that Plaintiff does not set forth a viable damages request.

12

discrimination. . . . Consequently, any claim for age discrimination has been abandoned and the Court will not address the issue."); *Bell v. Methodist Healthcare Memphis Hosps.*, 2013 WL 321693 at \*6-7 (W.D.Tenn. Jan. 28, 2013) (age discrimination claim abandoned by plaintiff based on the plaintiff's deposition testimony).

Given Plaintiff's unequivocal deposition testimony, the court deems Plaintiff's case to be narrowed to only claims that he was denied a promotion to a Feeder Driver position because of unlawful race discrimination. Accordingly, Plaintiff's THRA claim for national origin discrimination (part of Count I), his THRA and Title VII claims related to a failure to promote to any other position (part of Counts I and II), his Section 1981 claim for racial harassment (Count III),[3] and his THRA, Title VII, and Section 1981 claims for retaliation (Count IV) have all been abandoned by Plaintiff and are no longer a part of this case. Plaintiff has not offered any response to Defendant's abandonment argument, and his failure to address Defendant's argument that some of his claims have been abandoned by virtue of his deposition testimony can itself be viewed as an abandonment of these claims. *See Carrigan v. Arthur J. Gallagher Risk Mgmt. Servs., Inc.*, 870 F.Supp.2d 542, 549-50 (M.D. Tenn. 2012) (plaintiff abandoned claims by not defending them in his response brief to motion for summary judgment).

---

[3] Although Defendant analyzes Count III as including a failure to promote claim, Count III is specifically asserted as a claim for racial harassment and, unlike Counts I, II, and IV, does not include Defendant's failure to promote as a basis for the count. *See* Complaint at 4-6. The court construes Count III as pled by Plaintiff, which asserts only a Section 1981 claim based upon racial harassment.

## C. Failure to promote claims - Feeder Driver Position

The primary legal hurdle that Plaintiff cannot overcome regarding claims based upon Defendant's failure to promote him to the Feeder Driver Position is that he waited much too long to pursue a claim based upon this alleged wrongdoing.

With respect to Plaintiff's Title VII claim for a failure to promote, he was required to have filed a charge of discrimination within 300 days of the alleged unlawful conduct in order to later bring a lawsuit under Title VII. *See* 42 U.S.C. § 2000e-5(e); *Amani v. Oberlin College*, 259 F.3d 493, 498-99 (6th Cir. 2001); *Puckett v. Tennessee Eastman Company*, 889 F.2d 1481, 1486-88 (6th Cir. 1989).[4]   However, the undisputed facts show that the most recent time that Plaintiff was denied a Feeder Driver position was in 2016, yet he did not file a charge of discrimination until January 11, 2019, well beyond the 300 day period.   Thus, his Title VII claim that he was racially discriminated when he was denied a Feeder Driver position in 2014, 2015, and 2016, is barred because it was not untimely raised in a charge of discrimination.   The failure to exhaust administrative remedies through the timely filing of a claim is an appropriate basis for the dismissal of a claim.   *See Williams v. Northwest Airlines, Inc.*, 53 Fed.App'x 350, 351 (6th Cir. 2002).

Plaintiff's charge of discrimination states "continuing action" as the date the discrimination took place.   *See* Docket Entry No. 24-1 at 3.   In his complaint, he also alleges that he has been continually denied a promotion.   *See* Complaint at 3, ¶¶ 4-7.   Although the "continuing violation" doctrine does apply in some factual situations to allow review of

---

[4] Because Tennessee is a "deferral state" for the purposes of federal discrimination statutes, Plaintiff is permitted 300 days within which to file a charge of discrimination.   *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375-76 (6th Cir. 2002).

14

otherwise untimely clams when they are sufficiently linked to a timely claim, the doctrine does not apply in this case because Plaintiff's claim that Defendant failed to promote him to the Feeder Driver position on the three occasions at issue is based upon discrete acts that were required to be timely pursued by Plaintiff. An employer's refusal to hire an applicant for a specific job or position is a discrete act that constitutes a separate "unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002). Such acts must be timely raised in an administrative charge in order to be actionable in a subsequent lawsuit. *Id.*; *Broadway v. United Parcel Serv., Inc.*, 499 F.Supp.2d 992, 999 (M.D.Tenn. 2007).

Plaintiff's claim under the THRA fares no better. The THRA provides plaintiff with "one (1) year after the alleged discriminatory practice ceases" within which to file suit. T.C.A. § 4-21-311(d); *Weber v. Moses*, 938 S.W.2d 387, 389-90 (Tenn.1996). *See also Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir.2001). On each occasion that Plaintiff was wrongfully denied a promotion to the Feeder Driver position, he had one year within which to file a claim under the THRA. The undisputed facts show that he simply did not timely file his lawsuit suit raising his THRA claim.

### D. Section 1981 Claims

Plaintiff's complaint sets out Section 1981 as the basis for a claim of racial harassment (Count III) and a claim of retaliation (Count IV). As noted *supra* at Section VI.B, both claims have been abandoned by Plaintiff. However, the court notes that the racial harassment claim brought under Section 1981, even if were not abandoned, suffers from a clear legal deficiency

that requires dismissal. The evidence in the record shows that this claim is based upon disparaging comments made by trainer John Williams during the FD Training that occurred in 2014.[5] Even under the expansive four year statute of limitations for Section 1981 that is applicable to this claim, *see Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382-83 (2004), the claim was not pursued in a timely manner and is barred by the statute of limitations.

With respect to the claim of retaliation, Plaintiff has offered no actual argument or evidence supporting a claim that any of Defendant's decisions to not select him for a Feeder Driver position were causally linked to his internal complaints about discrimination. Plaintiff has offered no direct evidence of retaliation by Defendant, and his retaliation claim is based on only his own speculation of a retaliatory link between his complaints and Defendant's actions. However, unsupported speculation and conclusory allegations of retaliation because of protected activity is not enough to defeat a summary judgment motion. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 519 (6th Cir. 2009); *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996).

---

[5] Plaintiff asserts in his complaint that these comments were made by "Don Williams." *See* Complaint at 3, ¶ 8. However, although Plaintiff was trained by Don Williams in 2015, the evidence in the record links the alleged comments to John Williams and the 2014 FD Training. Plaintiff stated in his Charge that the comments were made during the 2014 FD Training, *see* Docket Entry No. 34-1, he testified in his deposition that he was trained in 2014 by John Williams, who he contends made discriminatory comments to him, *see* Plaintiff's Deposition Transcript at 48 and 57, and both the 2014 grievance that he asserts he submitted to his union and his interrogatory responses state that the comments were made by John Williams in 2014. *See* Docket Entry No. 34-1 at 29-30 and 33.

16

# R E C O M M E N D A T I O N

For the reasons set out above, it is respectfully RECOMMENDED that the motion for summary judgment (Docket Entry No. 31) of Defendant United Parcel Service, Inc., be GRANTED and that this action be DISMISSED WITH PREJUDICE as to all claims.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge

17